TOBIAS, J.,
concurs in the result and assigns reasons.
|,Article I, section 4 of the 1974 Louisiana Constitution may have been the most extensively debated provision of the proposed constitution during the 1973 Louisiana Constitutional Convention. As finally adopted, it read:
Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction.
This Section shall not apply to appropriation of property necessary for levee and levee drainage purposes.
[Emphasis supplied.]
12As then Associate Justice James Dennis noted on rehearing in Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 483 So.2d 958, on rehearing, 496 So.2d 281, 288 (1986)
The clear provisions of Article I, § 4 and the proceedings of the 1973 Constitutional Convention demonstrate conclusively that the delegates intended only to construct a safeguard for private property against state takings without compensation or for non public purposes and did not purport to affect the legislature’s ability to manage or dispose of the state’s own property through the exercise of its plenary or police powers. Opening the section is a paragraph recognizing every person’s right to own and control “private property.” Har-grave, supra, at 11 [Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974,, 35 La. L.Rev. 1, 11 (1974) ]. The remainder of the Section limits governmental authority to take or damage private property. Jenkins, supra, at 21 [Jenkins, The Declaration of Rights, 21 Loy. L.Rev. 9, 21 (1975) ]. That the adjective “private” is not coupled with “property” throughout the section is not significant because the section was introduced, debated, amended and twice adopted as a single paragraph. Only after adoption of its substance was it divided into three paragraphs by the Committee on Style and Drafting, solely to promote readability. Following its stylistic changes, it was again presented to the convention with no pretext of substantive change, and was finally *587 adopted without further discussion. XII Records, August 30, 1973 at 6-54, 56-120; XV Records, September 13, 1973 at 34-68; XXXVII Records, January 10, 1974 at 3-4. At no point during the debates did the delegates manifest an intent to afford protection under the section to government entities. On the contrary, their sole concern was the relation of the state to the individual and the power of eminent domain over private property. Id. [Emphasis supplied.]
Although one might interpret the unamended article I, section 4 to adequately protect the rights of persons from the excesses of government such as those asserted by the Burgesses (see the emphasized language in the original section 4 above and the citations to the debates of the Constitutional Convention in Board of Commissioners, supra), the Louisiana Legislature proposed constitutional amendments in 1989, 2003, and 2006 that inter alia, expanding the language of the |3section to protect against government (state and political subdivisions) taking private property and turning the property taken over to a private person for development. Two of the last of the proposed amendments (creating subsections (B) and (H) of section 4) proposed to the electors by the legislature in 2006 in a seemingly “urgent” response to the United States Supreme Court’s decision in Kelo v. City of New London, Connecticut, 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005), although possibly unnecessary given the literal language of the then existing article I, section 4 and the debates of the Constitutional Convention, resulted in article I, section 4 reading in its entirety as follows:
(A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
(B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity-
(2) As used in Subparagraph (1) of this Paragraph and in Article VI, Section 23 of this Constitution, public purpose shall be limited to the following:
(a) A general public right to a definite use of the property.
(b) Continuous public ownership of property dedicated to one or more of the following objectives and uses:
(i) Public buildings in which publicly funded services are administered, rendered, or provided.
(ii) Roads, bridges, waterways, access to public waters and lands, and other public transportation, access, and navigational systems available to the general public.
(iii) Drainage, flood control, levees, coastal and navigational protection and | reclamation for the benefit of the public generally.
(iv) Parks, convention centers, museums, historical buildings and recreational facilities generally open to the public.
(v) Public utilities for the benefit of the public generally.
(vi) Public ports and public airports to facilitate the transport of goods or persons in domestic or international commerce.
*588 (c) The removal of a threat to public health or safety caused by the existing use or disuse of the property.
(3) Neither economic development, enhancement of tax revenue, or any incidental benefit to the public shall be considered in determining whether the taking or damaging of property is for a public purpose pursuant to Subpara-graph (1) of this Paragraph or Article VI, Section 23 of this Constitution.
(4) Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question.
(5) In every expropriation or action to take property pursuant to the provisions of this Section, a party has the right to trial by jury to determine whether the compensation is just, and the owner shall be compensated to the full extent of his loss. Except as otherwise provided in this Constitution, the full extent of loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because of the expropriation.
(6) No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction.
(C) Personal effects, other than contraband, shall never be taken.
(D) The following property may be forfeited and disposed of in a civil proceeding, as provided by law: contraband drugs; property derived in whole or in part from contraband drugs; property used in the distribution, transfer, sale, felony possession, manufacture, or transportation of contraband | Sdrugs; property furnished or intended to be furnished in exchange for contraband drugs; property used or intended to be used to facilitate any of the above conduct; or other property because the above-described property has been rendered unavailable.
(E) This Section shall not apply to appropriation of property necessary for levee and levee drainage purposes.
(F) Further, the legislature may place limitations on the extent of recovery for the taking of, or loss or damage to, property rights affected by coastal wetlands conservation, management, preservation, enhancement, creation, or restoration activities.
(G) Compensation paid for the taking of, or loss or damage to, property rights for the construction, enlargement, improvement, or modification of federal or non-federal hurricane protection projects, including mitigation related thereto, shall not exceed the compensation required by the Fifth Amendment of the Constitution of the United States of America. However, this Paragraph shall not apply to compensation paid for a building or structure that was destroyed or damaged by an event for which a presidential declaration of major disaster or emergency was issued, if the taking occurs within three years of such event. The legislature by law may provide procedures and definitions for the provisions of this Paragraph.
(H)(1) Except for leases or operation agreements for port facilities, highways, qualified transportation facilities or airports, the state or its political subdivisions shall not sell or lease property which has been expropriated and held for not more than thirty years without first offering the property to the original *589 owner or his heir, or, if there is no heir, to the successor in title to the owner at the time of expropriation at the current fair market value, after which the property can only be transferred by competitive bid open to the general public. After thirty years have passed from the date the property was expropriated, the state or political subdivision may sell or otherwise transfer the property as provided by law.
(2) Within one year after the completion of the project for which the property was expropriated, the state or its political subdivision which expropriated the property shall identify all property which is not necessary for the public purpose of the project and declare the property as surplus property.
(3) All expropriated property identified as surplus property shall be offered for sale to the original owner or his heir, or, if there is no heir, to the successor in title to the owner at the time of expropriation at the current fair market value, within two years after completion of the project. If the original owner, heir, or other successor in title refuses or fails to purchase the surplus property within three years from completion of the project, then the surplus property may be offered for sale to the general public by competitive bid.
|fi(4) After one year from the completion of the project for which property was expropriated, the original owner or his heir, or, if there is no heir, the successor in title to the owner at the time of expropriation may petition the state or its political subdivision which expropriated the property to have all or any portion of his property declared surplus. If the state or its political subdivision refuses or fails to identify all or any portion of the expropriated property as surplus, the original owner or the successor in title may petition any court of competent jurisdiction to have the property declared surplus.
In my view, the issue is quite simple; the New Orleans Redevelopment Authority (NORA) has statutory and constitutional authority, on behalf of the City of New Orleans, to expropriate blighted property where the health and safety of the citizens of Orleans Parish are being affected that by private property if the owner thereof has failed to maintain the property in a manner consistent with that of a civilized urban environment. NORA, therefore, has been delegated a portion of the police powers that the City of New Orleans, like each governmental entity, possesses.
Based upon the record on appeal, no doubt exists that the Burgesses property was blighted. The dwelling became uninhabitable and was being used by vagrants and drug dealers. It was torn down after a permit was obtained to do so. Weeds and shrubbery overgrew the property creating a public nuisance, to-wit, a rat har-borage. The Burgesses ceased paying the property taxes. Liens continued to accrue on the property and those liens were recorded in the mortgage office of Orleans Parish. For all intents and purposes, the property had been abandoned by its owners. NORA properly proceeded in its expropriation.
I find nothing in article I, section 4 that impinges upon the states or a ^political subdivisions police powers to preserve public security, order, health, morality, and justice.[1]
*590 Since NORA has not begun the process of disposing the expropriated property to a third person, it is premature for this court to address whether NORA has or will violate article I, section 4(H). The majority is correct in not deciding that issue since any expression or interpretation of law would only be advisory and mere dictum.
In sum, no violation of article I, section 4 of the Louisiana Constitution has been demonstrated by the Burgesses. At this stage of the proceedings and the process, I find NORA has proceeded properly as a matter of law and fact, and this court properly fails to address an assigned error that is not ripe for decision.
Accordingly, I respectfully concur in the result reached by the majority.

. By implication, article VI, section 9(B) of the Louisiana Constitution grants police powers to both political subdivisions and the state, but those of the state are superior to those of a political subdivision. See also La. Const, article VI, section 44, and article VII, section 14.